Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/25/2020 09:06 AM CST

STATE OF NEBRASKA, APPELLEE, V.
MAURICE L. BRIGGS, APPELLANT.

___ N.W.2d ___

Filed February 25, 2020.    No. A-19-300.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate the Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Constitutional Law: Search and Seizure.** The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches and seizures.

3. ____: ____. The Nebraska Constitution provides a similar protection to the U.S. Constitution's prohibition against unreasonable searches and seizures.

4. **Constitutional Law: Search Warrants: Probable Cause.** The execution of a search warrant without probable cause is unreasonable and violates constitutional guarantees.

5. **Constitutional Law: Arrests: Warrantless Searches: Probable Cause: Motor Vehicles.** The recognized exceptions to the Fourth Amendment's warrant requirement as applied to warrantless searches of vehicles are probable cause, exigent circumstances, consent, search incident to arrest, inventory, and plain view.

6. **Search and Seizure: Police Officers and Sheriffs.** It is well recognized that inventory searches conducted according to established policy are reasonable.

7. ____: ____. Inventory searches are considered reasonable because they serve at least three needs unrelated to criminal investigation: (1) to protect the owner's property while it remains in police custody, (2) to

protect police against claims that they lost or stole the property, and (3) to protect police from potential danger.

8. **Search and Seizure.** The propriety of an inventory search is judged by a standard of reasonableness, and such a search must be conducted in accordance with standard operating procedures.

9. ____. An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.

10. **Constitutional Law: Search and Seizure.** There is no constitutional requirement that inventory policies be established in writing.

11. ____: ____. A failure to strictly follow established policy does not render an inventory search unconstitutional per se.

12. ____: ____. Whether a search is permissible under the Fourth Amendment depends on whether it is reasonable, and the test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts.

13. **Words and Phrases.** The word "pretext" is defined as a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs.

14. **Arrests: Search and Seizure: Words and Phrases.** A pretext arrest is one where the arrest is only a sham or a front being used as an excuse for making a search.

15. **Arrests: Appeal and Error.** The determination of whether an arrest is pretextual is a question of fact for the trial court and will not be reversed by the appellate court unless clearly erroneous.

16. **Motions to Suppress: Witnesses: Evidence.** At a hearing to suppress evidence, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence.

17. **Motions to Suppress: Witnesses: Appeal and Error.** In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court recognizes the trial court as the trier of fact and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress.

18. **Police Officers and Sheriffs: Search and Seizure: Intent.** In the context of administrative and inventory searches, the ulterior motives of an officer do not invalidate police conduct that is objectively justifiable.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Bethany R. Stensrud for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

Pirtle, Riedmann, and Welch, Judges.

Welch, Judge.

## INTRODUCTION

Following an investigation of an alleged altercation leading to Maurice L. Briggs' arrest, officers searched his vehicle before impounding it and found drug paraphernalia. The record does not contain an inventory sheet, but it does contain an impound sheet listing only Briggs' wallet, identification card, Social Security card, and drug paraphernalia. Briggs unsuccessfully sought to suppress the evidence because the district court determined the search was a proper inventory search. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

In December 2017, a police officer responded to a call concerning an assault in progress involving pepper spray at an Omaha, Nebraska, discount store. Upon arriving at the scene, the initial responding officer (initial officer) learned the people involved in the alleged assault left in a black Jeep, which vehicle he then encountered in a parking lot of an automobile parts supply store located across the street from the discount store. Video from the officer's cruiser camera depicted that the initial officer parked his cruiser behind the vehicle with the cruiser's emergency lights activated. The driver, Briggs, and the passenger, Jessica Hakl, were outside the vehicle when the initial officer made contact with them. Both Briggs and Hakl denied using pepper spray, and the initial officer did not observe any evidence that an assault had occurred.

While other officers arrived at the scene, the initial officer asked Briggs and Hakl for identification. Briggs stated he did not have any identification with him and identified himself as "Anthony Anderson" born "December 18, 1975," while Hakl

likewise stated she did not have any identification but gave her name and birth date. The initial officer then returned to his police cruiser to run a records check and found Hakl's information. Hakl's record indicated she had a history of drug-related convictions. As a result, the initial officer asked Hakl if he could search her purse and told Hakl, "The reason I'm asking, besides wanting to know where the mace is, you do have a history of drugs on your record." Hakl declined. During the encounter, the initial officer continued to ask Hakl for permission to search her purse, which Hakl refused. The initial officer then asked Briggs for permission to search the vehicle, but Briggs refused. After that, the initial officer requested that a "K-9 unit" be dispatched to the scene; however, none were available.

Following this exchange, the initial officer ran a records check on "Anthony Anderson," but was unable to locate any information on that name. He then asked Briggs a second time for his information, and Briggs responded with the same name but gave a different birth date. One of the responding officers ran the license plate number of the vehicle, which revealed the vehicle was registered to Briggs. The initial officer then viewed a driver's license photograph of Briggs in a law enforcement database and identified the driver as Briggs. After performing a records check on Briggs, the initial officer learned that there was a misdemeanor arrest warrant for Briggs and that Briggs' driver's license was suspended. As a result, the initial officer arrested Briggs for supplying false information to a police officer, driving on a suspended license, and the misdemeanor arrest warrant. The initial officer told the additional responding officers at the scene, "Now we can search it." Once Briggs was secured in a police cruiser, the initial officer asked, "I think we can search that car now, can't we? Search incident to arrest?" One of the responding officers then clarified, "No, it's an inventory search." The initial officer replied, "Inventory search, yeah."

Two responding officers proceeded to search the vehicle, which they described as "packed to the brim" with various items. During the search, officers found a cell phone box in the front seat passenger area. They also discovered a canvas bag on the center console. This canvas bag contained Briggs' wallet, identification card, and Social Security card, as well as drug paraphernalia that included several baggies suspected of containing methamphetamine and one baggie suspected of containing cocaine. Briggs claimed ownership of the cell phone box but not the canvas bag. Based on the testimony of the officers and video from the initial officer's body camera, other items located in the vehicle appeared to include credit and debit cards, a tablet, a set of house keys, a walkie-talkie-type device, a Visa gift card, several cell phone chargers, and bags of clothing and hair products. There was no separate written document which captured the items identified by the officers during their search.

Following the discovery of the contraband, the initial officer's body camera video included the following exchange in which the initial officer told the other responding officers: "Well, yeah, there's that felony," to which another officer responded, "Well, there you go, there's that felony you were waiting on, there it is." As the search drew to a close, the body camera video also recorded the initial officer's comment that they needed to tow the vehicle because they "inventoried it." Finally, the body camera video captured an officer's inquiry governing what reason to list on the form in relation to impounding the vehicle. Specifically, an officer asked: "Impound tow? Safekeeping?" The initial officer replied, "For drug arrest." The impounded vehicle report listed the reason for towing as a drug arrest and noted in the details section of the report: "Ve[h]icle towed for safekeeping."

The contraband tested positive for cocaine and methamphetamine. Briggs was charged with two counts of felony possession of a controlled substance. See Neb. Rev. Stat. § 28-416 (Cum. Supp. 2018).

### Motion to Suppress

Prior to trial, Briggs filed a motion to suppress alleging the vehicle search was unconstitutional. At the suppression hearing, the State did not offer a written policy of the Omaha Police Department (OPD) governing inventory searches or impoundments, but did adduce evidence including testimony from the initial officer and one of the responding officers and video recordings of the incident from the initial officer's body camera and police cruiser camera.

The responding officer testified that an inventory search must be conducted according to OPD policy and that the reasons to conduct an inventory search include the following: (1) to catalog property prior to the vehicle's being taken into police possession, (2) to protect OPD from allegations of mishandling property, and (3) to accurately track property in possession of OPD. However, he acknowledged that OPD may not inventory a vehicle to look for evidence of a crime. The responding officer further testified that an inventory search requires a thorough inventory of all property in the vehicle, that all property is to be documented, and that the purpose of an inventory log is to protect OPD from a lawsuit if the items are misplaced, while a property report is used to itemize the evidence collected for trial. The responding officer also testified that he did not fill out an inventory log and was unsure if any of the other officers completed an inventory log. The record does not contain an inventory log. When asked about the search of the vehicle, the responding officer testified that he subsequently created an item submission form to document the evidence found. On the impounded vehicle supplemental report, the officers listed only the contraband and Briggs' wallet, identification card, and Social Security card, but they did not include other items discovered in connection with their investigation.

Concerning OPD's vehicle towing policy, the responding officer testified that towing is allowed only when necessary due to a parking violation, due to an accident, for public safety,

or for evidentiary purposes. He further testified that towing a vehicle is unnecessary when the vehicle can be locked and left on the street. The responding officer testified that Briggs' vehicle was legally parked in a parking stall at the automobile supply store parking lot, but that he called for a tow truck after determining Briggs was going to jail. The initial officer testified that the purpose of towing the vehicle was for "safekeeping."

The district court overruled Briggs' motion to suppress, finding that the inventory search by the officers was proper, reasonable, and not unconstitutional. Specifically, among other things, the district court found that, after officers arrested Briggs for providing false information, for driving on a suspended license, and for the active warrant, "the officers decided to impound [Briggs'] vehicle as [Briggs] was under arrest and the vehicle was on private property. [One of the responding officers] called for a tow to have the vehicle towed to the police impound lot. An inventory search was then done." The court further found that "[o]nce the decision was made to impound the vehicle, the police had a right to do an inventory search for protection of the property of [Briggs] and also to protect the police from false accusations of disposition of the property."

### TRIAL AND SENTENCING

A stipulated bench trial was held in December 2018, with Briggs preserving the issues raised in his motion to suppress. At the trial, the State offered video recordings of the incident, various police reports, the property report listing the contraband found in the vehicle, and the laboratory report for the controlled substances discovered during the vehicle search. Two different reasons for towing the vehicle were listed on the impounded vehicle report: drug arrest was listed under the reason section and "[v]e[h]icle towed for safekeeping" was listed under the details section. The impounded vehicle supplemental report noted: "In the bag R/O found BRIGGS's

wallet which contained his ID and social security card. In the side pocket of the bag R/O found a smaller fuzzy zippered bag containing a glass pipe, needles, spoon, and small plastic container later determined to contain methamphetamine." The impounded vehicle supplemental report also noted another bag was discovered containing numerous empty small baggies and several empty needles.

The district court found Briggs guilty of two counts of possession of a controlled substance, both Class IV felonies. Thereafter, Briggs was sentenced to consecutive 30-month terms of probation on each count. Briggs timely appeals to this court.

## ASSIGNMENT OF ERROR

Briggs contends that the district court erred in denying his motion to suppress.

## STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Nielsen*, 301 Neb. 88, 917 N.W.2d 159 (2018). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate the Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *Id.*

## ANALYSIS

[2-5] The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches and seizures. See *State v. Hidalgo*, 296 Neb. 912, 896 N.W.2d 148 (2017). The Nebraska Constitution provides a similar protection. *Id.* The execution of a search warrant without probable cause is unreasonable and violates constitutional guarantees. *Id.* "The recognized exceptions to the Fourth Amendment's warrant requirement as applied to warrantless searches of vehicles are probable

cause, exigent circumstances, consent, search incident to arrest, inventory, and plain view." *State v. Ray*, 9 Neb. App. 183, 188, 609 N.W.2d 390, 395 (2000).

Following a suppression hearing, the district court found that OPD's warrantless search of Briggs' vehicle was a constitutionally excepted inventory search. Briggs argues the district court erred in denying his motion to suppress evidence discovered during the warrantless search of his vehicle. Specifically, he argues the purported inventory search was invalid because it was improper to tow his vehicle which led to the purported inventory search, OPD failed to satisfy its standards for conducting an inventory search, and the inventory search was a mere ruse by officers to uncover incriminating evidence without a warrant. These arguments require that we review both policy and law governing impoundments and inventory searches.

[6-9] The Nebraska Supreme Court recently had occasion to outline the constitutional principles associated with inventory searches in *State v. Nunez*, 299 Neb. 340, 345-46, 907 N.W.2d 913, 917-18 (2018), in which the court held:

> The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches and seizures. It is well recognized that inventory searches conducted according to established policy are reasonable.
>
> Inventory searches are considered reasonable because they serve at least three needs unrelated to criminal investigation: (1) to protect the owner's property while it remains in police custody, (2) to protect police against claims that they lost or stole the property, and (3) to protect police from potential danger. These purposes impact our analysis of the procedures used in the case before us.
>
> The propriety of an inventory search is judged by a standard of reasonableness, and such a search must be conducted in accordance with standard operating procedures. The reason for requiring standardized criteria or an established routine to regulate inventory searches is

as follows: "'[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into "a purposeful and general means of discovering evidence of crime . . . ."'"

As the U.S. Supreme Court noted in *South Dakota v. Opperman*, 428 U.S. 364, 369-71, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976):

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States v. Mitchell,* 458 F. 2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, *United States v. Kelehar,* 470 F. 2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper v. California, supra,* [386 U.S.] at 61-62. The practice has been viewed as essential to respond to incidents of theft or vandalism. See *Cabbler v. Commonwealth,* 212 Va. 520, 522, 184 S. E. 2d 781, 782 (1971), cert. denied, 405 U. S. 1073 (1972); *Warrix v. State,* 50 Wis. 2d 368, 376, 184 N. W. 2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.

These caretaking procedures have almost uniformly been upheld by the state courts, which by virtue of the localized nature of traffic regulation have had considerable occasion to deal with the issue. Applying the Fourth Amendment standard of "reasonableness," the state courts have overwhelmingly concluded that, even if an inventory is characterized as a "search," the intrusion

is constitutionally permissible. See, *e. g., City of St. Paul v. Myles*, 298 Minn. 298, 300-301, 218 N. W. 2d 697, 699 (1974); *State v. Tully,* 166 Conn. 126, 136, 348 A. 2d 603, 609 (1974); *People v. Trusty,* 183 Colo. 291, 296-297, 516 P. 2d 423, 425-426 (1973); *People v. Sullivan,* 29 N. Y. 2d 69, 73, 272 N. E. 2d 464, 466 (1971); *Cabbler v. Commonwealth, supra*; *Warrix v. State, supra*; *State v. Wallen,* 185 Neb. 44, 173 N. W. 2d 372, cert. denied, 399 U. S. 912 (1970); *State v. Criscola,* 21 Utah 2d 272, 444 P. 2d 517 (1968); *State v. Montague,* 73 Wash. 2d 381, 438 P. 2d 571 (1968); *People v. Clark,* 32 Ill. App. 3d 898, 336 N. E. 2d 892 (1975); *State v. Achter,* 512 S. W. 2d 894 (Mo. Ct. App. 1974); *Bennett v. State,* 507 P. 2d 1252 (Okla. Crim. App. 1973); *People v. Willis,* 46 Mich. App. 436, 208 N. W. 2d 204 (1973); *State v. All,* 17 N. C. App. 284, 193 S. E. 2d 770, cert. denied, 414 U. S. 866 (1973); *Godbee v. State,* 224 So. 2d 441 (Fla. Dist. Ct. App. 1969). Even the seminal state decision relied on by the South Dakota Supreme Court in reaching the contrary result, *Mozzetti v. Superior Court,* 4 Cal. 3d 699, 484 P. 2d 84 (1971), expressly approved police caretaking activities resulting in the securing of property within the officer's plain view.

The majority of the Federal Courts of Appeals have likewise sustained inventory procedures as reasonable police intrusions. As Judge Wisdom has observed: "[W]hen the police take custody of any sort of container [such as] an automobile . . . it is reasonable to search the container to itemize the property to be held by the police. [This reflects] the underlying principle that the fourth amendment proscribes only *unreasonable* searches." *United States v. Gravitt,* 484 F. 2d 375, 378 (CA5 1973), cert. denied, 414 U. S. 1135 (1974) (emphasis in original).

Taken together, valid inventory searches have been established as reasonable searches because of the need for officers

to protect themselves once they have properly taken custody of property. But Briggs argues that the officers did not properly impound his vehicle, they did not follow their established policy of inventorying a vehicle, and their search labeled as an inventory search was, in fact, a ruse for a custodial investigation. We will analyze these arguments independently.

## Impoundment

In recognition that police custody or impoundment is a condition precedent to an inventory search, Briggs argues that impoundment of his vehicle was unnecessary. In connection with this claim, Briggs cites to OPD's stated impoundment policy whereby officers are instructed to lock and leave vehicles whenever possible. He argues that his vehicle was not parked on a public street or highway, was not obstructing traffic, had not been involved in an accident, was not reported stolen, and had no unpaid parking tickets. He further argues that OPD had not received a request from the commercial parking lot owner to have the vehicle removed, nor did OPD seek permission from the parking lot owner to leave the vehicle there.

The U.S. Supreme Court confronted a similar question governing the discretion of police officers in impounding a vehicle in *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987). The U.S. Supreme Court, in determining the constitutionality of an officer's exercise of discretion in determining whether to impound a vehicle, held:

> Nothing in [*South Dakota v.*] *Opperman*[, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976),] or [*Illinois v.*] *Lafayette*[, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983),] prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity. Here, the discretion afforded the Boulder police was exercised in light of standardized criteria, related to the feasibility and

appropriateness of parking and locking a vehicle rather than impounding it. There was no showing that the police chose to impound [the defendant's] van in order to investigate suspected criminal activity.

*Colorado v. Bertine*, 479 U.S. at 375-76.

In *U.S. v. Jackson*, 682 F.3d 448 (6th Cir. 2012), the Sixth Circuit Court of Appeals held that police properly exercised discretion in towing a vehicle from a private driveway where the driver and passenger were not legal drivers and neither had a connection with the owners of a private driveway where the vehicle was parked and that the action conformed to police policy and to local ordinances governing vehicles left on private property. In so holding, the court rejected the appellant's argument that the officer should first have contacted the property owner or the vehicle owner's fiance before towing the vehicle. In so rejecting this assertion, the court held:

[W]e rejected a similar argument in *United States v. Kimes*, 246 F.3d 800 (6th Cir. 2001), stating: "Discretion as to impoundment is permissible 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.' *Colorado v. Bertine*, 479 U.S. 367, 375-376, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Here, as we gather, V.A. police sometimes permitted vehicles to be picked up by a driver's friends and relations if they were already present or if the driver could contact them and get them to come to the facility promptly. [The defendant] suggests that rather than towing his truck, the officers should have taken it upon themselves to call his wife and ask her to get the vehicle. He cites no authority compelling such a conclusion, and we are aware of none."

*U.S. v. Jackson*, 682 F.3d at 454.

Briggs makes a similar argument here. However, during the suppression hearing, an OPD officer testified that OPD impound policy provides discretionary authority for officers

to impound and tow vehicles in the exercise of public safety, among other reasons.

We note at this point that the State relied upon oral testimony from OPD's officers governing OPD's policies for both impoundment and inventory searches in lieu of offering a written policy into evidence. We further note that during cross-examination, Briggs' counsel referred to OPD's "manual" in questioning the officers about OPD's policies but, for whatever reason, did not offer OPD's written policies into evidence or clarify if written policies existed.

[10] In *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993), the Nebraska Supreme Court examined the requirement for written policies in connection with establishing law enforcement's standardized procedures. In doing so, the court held:

> While a written policy is obviously the best means by which to establish the existence of a standardized policy, see Wayne R. LaFave, *Controlling Discretion by Administrative Regulations: The Use, Misuse, and Nonuse of Police Rules and Policies in Fourth Amendment Adjudication*, 89 Mich. L. Rev. 442 (1990), and at least one state has held that such procedures must be in writing to pass muster under the state Constitution, *Commonwealth v. Bishop*, 402 Mass. 449, 523 N.E.2d 779 (1988), such written policy is not an indispensable requirement.
>
> For example, in *U.S. v. Frank*, 864 F.2d 992 (3d Cir. 1988), *cert. denied* 490 U.S. 1095, 109 S. Ct. 2442, 104 L. Ed. 2d 998 (1989), the fact that an officer testified to the existence of standard police procedures and a detective testified that he followed them was held to be sufficient to render an inventory search valid. Noting that "[n]o Supreme Court case has ever held an inventory search invalid because of the absence of formalized pre-existing standards," the U.S. Court of Appeals for the Third Circuit proclaimed that "no standard for the scope of the inventory other than the listing of every item of property would satisfy the relevant governmental

interests." 864 F.2d at 1003-04. The court continued, stating that "[c]ertainly the [Supreme] Court did not intend to lay down a constitutional requirement that the police have a written standard for conducting an inventory that merely states the obvious. Such a requirement would add nothing to the protection of privacy interests, for no standard ever would be laid down except that of completeness. Inventory searches by their nature afford the police the opportunity to eliminate expectations of privacy in personal property lawfully in police custody. It seems likely, therefore, that all that *Bertine* requires is a standard as to *when* inventories should be made." (Emphasis supplied.) 864 F.2d at 1004. See, also, *U.S. v. Kornegay*, 885 F.2d 713 (10th Cir. 1989), *cert. denied* 495 U.S. 935, 110 S. Ct. 2179, 109 L. Ed. 2d 508 (1990) (officer testimony of customary and standardized procedure held sufficient in absence of written guidelines); *Madison v. United States*, 512 A.2d 279 (D.C. App. 1986) (although capitol police did not have written guidelines, fact that officer testified he had been trained by his supervisors and conducted search in accordance with such training held sufficient); *State v. Weide*, 155 Wis. 2d 537, 549, 455 N.W.2d 899, 905 (1990) ("[a]lthough it may be preferable, there is no rule of law that the policy or procedure governing the inventory search must be in writing"). Cf. *People v. Bayles*, 76 Ill. App. 3d 843, 846-47, 395 N.E.2d 663, 666 (1979), *aff'd* 82 Ill. 2d 128, 411 N.E.2d 1346 (1980), *cert. denied* 453 U.S. 923, 101 S. Ct. 3160, 69 L. Ed. 2d 1005 (1981) (officer testified that he had "'nothing on paper'" concerning his inventory policy, replied that he "'really couldn't tell you whether I have or not, it's a possibility'" to whether he instructed his deputies to open closed containers, and that it was his practice to open and inventory a closed container "'if it's not locked'").

Thus, there is no constitutional requirement that inventory policies be established in writing.

*State v. Filkin*, 242 Neb. 276, 283-84, 494 N.W.2d 544, 549-50 (1993).

As such, we analyze OPD's policies governing impoundment and inventories on the basis of the officers' testimony in our record. Here, the officers testified as to their broad discretion to impound vehicles on the basis of public safety. During the suppression hearing, the officers testified as to exercising that discretion in relation to having arrested Briggs, who was driving on a suspended license, following his placement of the vehicle in a private lot. After reviewing the evidence, the trial court found: "As a result of the arrest of [Briggs], the owner of the vehicle, the officers decided to impound [Briggs'] vehicle as [Briggs] was under arrest and the vehicle was on private property." We find no authority which provides that the officers were first required to contact the property owner to determine whether the vehicle could remain on the private property while the vehicle's owner, who was driving the vehicle on a suspended license, was arrested and removed, and Briggs cites to none. And although the officers' testimony at the suppression hearing governing OPD's safety policy is not as detailed as the policy articulated in *U.S. v. Jackson*, 682 F.3d 448 (6th Cir. 2012), it appears to provide broad discretion to its officers in determining whether an unattended vehicle poses a safety concern. As we discuss more later in this opinion, the ultimate question here is whether the officers' claim of having impounded Briggs' vehicle for safekeeping and the resulting inventory of the vehicle's contents was pretextual or a ruse for their true motive of performing a warrantless search of Briggs' vehicle. But as to this specific assignment of error in connection with that question, we do not find that the court erred in finding that the officer had a right to impound Briggs' vehicle under these circumstances based upon OPD's stated policy, nor erred in finding the officers decided to impound Briggs' vehicle before conducting their search.

INVENTORY SEARCH

Briggs next argues that the inventory search of his vehicle was invalid because the process followed by OPD failed to conform with its inventory policy. Specifically, Briggs argues:

> In addition to the unnecessary tow and inventory search, the responding officers failed to follow the OPD's procedures and policies for conducting an inventory search. This is evidenced by the fact that they did not draft or create an inventory report of the property found in . . . Briggs' vehicle. OPD policy is unambiguous in that officers are required to inventory all personal property items left in the vehicle whenever officers tow a vehicle. . . . Here, despite having a clear understanding of OPD's policies and procedures, the responding officers never drafted an inventory report.

Brief for appellant at 11 (emphasis in original). Briggs later argues: "Officers ultimately drafted a property report; however, the property report only lists the contraband that was seized from . . . Briggs' vehicle, including drug paraphernalia, methamphetamine, and cocaine. . . . The officers did not inventory any of . . . Briggs' personal property." Brief for appellant at 12.

We first note that although Briggs claims that OPD was required to inventory all personal property items in connection with its inventory, the testimony on this issue is not that clear. On direct examination governing OPD's inventory policy, the following colloquy took place:

> Q. Okay. Does OPD have a policy on impounding vehicles and a search prior to impounding vehicles?
>
> A. Uh, yes, when we take control of a vehicle to tow it to our impound lot we do an inventory search of it.
>
> Q. Okay. And what's the purpose of the inventory search?
>
> A. To make sure there's no high value items in the vehicle or any dangerous substances or anything like that.

Q. Are there any policies about how you go about doing a search or documentation of that search?

A. Um, we just conduct a search and then if we find any high value items or anything we'll book it into property.

Later, during cross-examination, Briggs' counsel asked:

Q. Okay. When you inventory a car, you are supposed to document all the property you find, right?

A. Any, yes.

Q. Again, the purpose is to protect [OPD] from saying anything was lost, stolen, or misplaced for your protection, right?

A. Correct.

Briggs' counsel did not obtain any further clarification on this topic.

On direct examination, the officer's testimony clearly stated that OPD's policy required identifying and cataloging items of high value. It is unclear whether the officer's response on cross-examination was clarifying that all property in the vehicle was required to be cataloged or whether he was referencing his previous testimony that all property that the officers determined to be of high value was to be cataloged. Either way, the officer then testified that officers did fail to prepare a separate inventory log and instead prepared only a property report after viewing the contents of Briggs' vehicle. Deeming this a failure to comply with OPD's stated policy, Briggs argues that the inventory search was invalid.

[11,12] A similar argument was made in *State v. Nunez*, 299 Neb. 340, 907 N.W.2d 913 (2018). In *Nunez*, the defendant was stopped for speeding and the officers discovered that his drivers' license was suspended and that there was an active warrant for his arrest. After arresting the defendant, the officers decided to impound the vehicle, and during a search of the vehicle, officers found a container holding a substance which tested positive for methamphetamine. The defendant subsequently moved to suppress all evidence obtained as a result

of the search of his vehicle, and the State took the position the search fell within the inventory exception to the warrant requirement. In response, the defendant argued that the police inventory policy required the police to prepare a property evidence report of inventoried items and that the police failed to comply with its own policy of proper documentation. In rejecting this argument, the Nebraska Supreme court held:

> A failure to strictly follow established policy does not render an inventory search unconstitutional per se. "'Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's caretaking function.'" Whether a search is permissible under the Fourth Amendment depends on whether it is reasonable, and "'"[t]he test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts."'"

*State v. Nunez*, 299 Neb. at 348, 907 N.W.2d at 918-19. After then distinguishing the case of *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996), which we discuss more fully in the next section of this opinion, the court ultimately held: "Here, the alleged technical errors on the inventory sheet and the lack of an evidence report do not raise the same inference [of a ruse for a general rummaging in order to discover incriminating evidence]." *State v. Nunez*, 299 Neb. at 349, 907 N.W.2d at 919. As such, like *Nunez*, the failure of the officers to properly document all of Briggs' property in connection with their search does not, in and of itself, render the search unconstitutional per se. Instead, the ultimate question is whether the claimed inventory search was simply pretext for a general rummaging by the police in order to discover incriminating evidence. That question is captured by Briggs' final argument, and we discuss it below.

### INVENTORY SEARCH: INVENTORY OR PRETEXT?

Briggs finally argues that the State's claim that it was conducting an inventory search was a pretext to its true motive of

discovering incriminating evidence. In connection therewith, Briggs argues that upon learning about Hakl's criminal record, the officers made numerous requests to search Hakl's purse and the vehicle but were denied. Following these denials, the officers learned of the arrest warrant for Briggs, arrested him, and then stated among themselves (as captured on an officer's body camera), "Now we can search it." After Briggs was secured in the police cruiser, the initial officer asked, "I think we can search that car now, can't we? Search incident to arrest?" One of the responding officers then clarified that it was "an inventory search," to which the initial officer replied, "Inventory search, yeah." Briggs argues that these facts and statements betray the officers' investigative motive underlying the vehicle search. Briggs further argues that the officers lacked consensus over the reason they impounded the vehicle and that the record points to the inconsistent reasons for impounding the vehicle as both a drug arrest and a "[v]e[h]icle towed for safekeeping." Briggs finally argues that this record, taken together with the officers' lack of compliance with OPD's policies regarding documentation of Briggs' property, demonstrates that the inventory search was mere pretext for the search of Briggs' vehicle.

As we have previously noted, the ultimate question here is not whether OPD failed to explicitly comply with all procedures in connection with its inventory policy. The ultimate question is whether this reasonably can be determined to be an inventory search and not "'"a ruse for a general rummaging in order to discover incriminating evidence."'" *State v. Nunez*, 299 Neb. 340, 349, 907 N.W.2d 913, 919 (2018), quoting *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993). The difference was highlighted by the Nebraska Supreme Court in *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996).

In *Nunez*, the Nebraska Supreme Court summarized the facts and holding in *Newman* and distinguished it from *Nunez* as follows:

In *Newman*, Lincoln police notified Nevada authorities that they were looking for a criminal suspect who was traveling by train to Nevada. The Nevada authorities arrested the defendant at a train station. At the time, he was carrying three suitcases. The authorities transported the defendant and his luggage to a detention center. They did not immediately search the suitcases, but inventoried them as bulk property.

It was not until after the Nevada authorities were told that certain items were needed as evidence that two police officers went to the detention center's property room and searched the suitcases, locating the needed evidence. Although it was the policy of the detention center to conduct an inventory search of the suitcases before placing them in the property room, we found that policy was not followed in *Newman.* Thus, we concluded that the search of the suitcases did not fall within the boundaries of the inventory exception.

Although the failure to follow established policy in *Newman* led to a suppression of evidence, *Newman* is clearly distinguishable from the case at hand. As noted above, the purpose of requiring searches to be conducted according to established policy is to ensure that inventory searches are "'not . . . a ruse for a general rummaging in order to discover incriminating evidence.'" In *Newman*, the timing of the search and the facts surrounding it raised an inference that the search was not designed to produce inventory, but to discover incriminating evidence. Here, the alleged technical errors on the inventory sheet and the lack of an evidence report do not raise the same inference.

299 Neb. at 348-49, 907 N.W.2d at 919.

In arguing that this case is more like *Newman* and less like *Nunez*, Briggs cites this court to *U.S. v. Rowland*, 341 F.3d 774 (8th Cir. 2003).

The *Rowland* case does present facts somewhat similar to the case at bar. In *Rowland*, police pulled over a vehicle which they observed to be weaving in traffic and confronted the driver who misidentified herself and turned out to be driving without a license. The driver likewise had a passenger who properly identified himself and who turned out to have an outstanding arrest warrant. The vehicle in which the two were traveling was registered to a third party who could not be reached, and the police became concerned that the vehicle was stolen despite the passenger's contention that he was in the process of purchasing the vehicle.

The police in *Rowland* ultimately decided to impound the vehicle and began a roadside inventory search. During the search, the officers discovered drug paraphernalia. The vehicle was then towed, and police performed another more thorough inventory search of the vehicle and discovered a handgun. Similar to the case at bar, after performing the search, the officers did not record all of the property in the vehicle but only recorded items which might be used as possible evidence. After unsuccessfully moving to suppress the firearm, the passenger pled guilty to being a felon in possession of a firearm, but reserved his right to appeal the district court's denial of his motion to suppress on the basis that the firearm was discovered during an invalid inventory search.

Although the Eighth Circuit similarly concluded that the police were justified in impounding the vehicle in accordance with its policy, the court in *Rowland* ultimately concluded that the corresponding inventory search was invalid. In finding that the inventory search was invalid, the court first noted the discrepancy between the law enforcement agency's written inventory policy which required law enforcement to catalog *all* property within the vehicle and the officer's testimony that, in practice, officers interpreted the policy to require them to catalog only *significant* property. In expressing concern for the officer's purported *unwritten* contradictory policy, the court noted that "our research has not revealed a

case allowing the written procedures for law enforcement to be eroded by unwritten practice." *U.S. v. Rowland*, 341 F.3d at 780.

Second, although recognizing the practiced difficulties in requiring police to record every single item in a vehicle packed full of miscellaneous items, the court held:

> Even assuming a literal listing of each and every article is not required, law enforcement's conduct still does not withstand scrutiny. Officers did not even generally note: "clothing" or "food items" or "boxes" or even "a multitude of miscellaneous items" as the government so colorfully puts it. What strikes us as absurd, therefore, is despite not even making these general notations, the government nonetheless argues it complied with a written policy which required it to record all property.

*U.S. v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003). Based upon these findings, the court concluded that "it is our opinion by failing to make a record of all property within the vehicle, law enforcement failed to follow its own procedures and thus did not conduct the search pursuant to 'standardized police procedures.'" *Id*. However, the court indicated that finding alone was not dispositive of the outcome. The court reasoned:

> Even when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of the evidence discovered as a result of the search. *E.g.*, *United States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998). "Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's care-taking function." *Id*. There must be something else; something to suggest the police raised "the inventory-search banner in an after-the-fact attempt to justify" a simple investigatory search for incriminating evidence. [*U.S. v.*] *Marshall*, 986 F.2d [1171,] 1175 [8th Cir. 1993)].

*U.S. v. Rowland*, 341 F.3d at 780.

In *Rowland*, the court concluded that in addition to the failure of law enforcement to follow its own procedures, "[h]ere there was something else." 341 F.3d at 780. The court then pointed to a myriad of factors which led them to the conclusion that the inventory search was simply a label for an investigatory search. Those factors included the officer's request for a drug-sniffing dog; the officers' repeated questions to the defendant as to whether there was contraband in the vehicle; the officers' investigation of the vehicle's occupants while both were detained but not arrested; the officers' admission to searching partly to discover the presence of narcotics; and the officers' failure to record the defendant's property even in the most general of ways, in accordance with the agency's written policy. On that basis, the court ultimately concluded:

> [I]t appears law enforcement sifted through the vehicle's contents searching only for and recording only incriminating evidence; something law enforcement may not do. *See id.* at 1175 ("The requirement that standardized criteria or established routine exist as a precondition to a valid inventory search 'is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.'") (citation omitted).
>
> Accordingly, this search was not a valid inventory search; more is expected of law enforcement.

*U.S. v. Rowland*, 341 F.3d 774, 782 (8th Cir. 2003).

Briggs argues for a similar conclusion, contending that many of the factors present in the *Rowland* case are present here and that, although *Rowland* does not present mandatory authority for this court, its holding provides persuasive authority for a similar outcome.

Before reaching an outcome here, we must first note the legal parallels between *State v. Nunez*, 299 Neb. 340, 907 N.W.2d 913 (2018), and *U.S. v. Rowland, supra*. In *Nunez*, the Nebraska Supreme Court reiterated that "the purpose of requiring searches to be conducted according to established policy is

to ensure that inventory searches are '"not . . . a ruse for a general rummaging in order to discover incriminating evidence."'" 299 Neb. at 349, 907 N.W.2d at 919, quoting *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993). In *Rowland*, the Eighth Circuit stated: "'Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's care-taking function.' . . . There must be something else; something to suggest the police raised 'the inventory-search banner in an after-the-fact attempt to justify' a simple investigatory search for incriminating evidence." 341 F.3d at 780. Briggs argues that the officers' testimony that they did inventory the contents of Briggs' vehicle and failed to catalog its contents because of its lack of value are all pretextual explanations for their true motive, which was to conduct an investigatory search of Briggs' vehicle for incriminating evidence. He urges this court to conclude the district court erred in determining that the officers' alleged inventory search was not a ruse or pretextual and that the evidence established sufficient proof the officers were conducting a valid inventory search and not raising the inventory search label in an after-the-fact attempt to justify a simple investigatory search.

[13,14] In reviewing the district court's finding, we first must identify our standard of review with respect to the district court's findings. In *State v. Vann*, 230 Neb. 601, 432 N.W.2d 810 (1988), the Nebraska Supreme Court reviewed the district court's order overruling a motion to suppress where the court found a police officer's arrest of the defendant was not merely pretext for his true motive to search the defendant for evidence of a crime. In its review, the court held that "[t]he word 'pretext' is defined in Webster's Third New International Dictionary, Unabridged 1797 (1981), as 'a purpose or motive alleged or an appearance assumed in order to cloak the real intention or state of affairs.'" *State v. Vann*, 230 Neb. at 605, 432 N.W.2d at 814. The court then stated, "In *Taglavore v. United States*, 291 F.2d 262, 265 (9th Cir. 1961), the court determined that a pretext arrest was one '[w]here the arrest

is only a sham or a front being used as an excuse for making a search . . . .'" *State v. Vann*, 230 Neb. at 605, 432 N.W.2d at 814.

[15] After reviewing this authority, the court affirmatively held:

> In interpreting the phrase, we hold that the determination of whether an arrest is pretextual is a question of fact for the trial court. This court will not reverse a trial court's finding on this question unless the finding is clearly erroneous. See *U.S. v. Portwood*, 857 F.2d 1221 (8th Cir. 1988).

*State v. Vann*, 230 Neb. at 605-06, 432 N.W.2d at 814.

In *State v. Chronister*, 3 Neb. App. 281, 285-86, 526 N.W.2d 98, 103 (1995), our court likewise surmised:

> A pretextual stop is one in which the officer's stated purpose or motive for the stop conceals his real intention or the real state of affairs. *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993), *cert. denied* [510] U.S. [836], 114 S. Ct. 113, 126 L. Ed. 2d 78. . . . The determination of whether a stop is pretextual is a question of fact for the trial court and will not be reversed by the appellate court unless clearly erroneous. See *State v. Vann*, 230 Neb. 601, 432 N.W.2d 810 (1988). Although not explicitly stated in the trial court's journal entry, the denial of the suppression of evidence carries the implicit finding that the stop was not pretextual. There is no rule of law that when the trial court acts as the fact finder, as is the case when ruling on a suppression motion, specific findings of fact must be made. See *State v. Franklin*, 241 Neb. 579, 489 N.W.2d 552 (1992).

Here, likewise, we conclude that the district court's finding that, despite its abnormalities, OPD officers did conduct an inventory search and not an investigatory search was a finding of fact which will not be reversed unless clearly erroneous. Accordingly, we must determine whether the court clearly erred in finding OPD officers did conduct an inventory search.

[16,17] In making this analysis, we are cognizant of the similarities between the instant case and *U.S. v. Rowland*, 341 F.3d 774 (8th Cir. 2003). We recognize the officers' deficiencies in failing to catalog items uncovered during their search of Briggs' vehicle. We are aware that OPD officers likewise called for a "K-9 unit," repeatedly asked for permission to search the interior of the vehicle, and were likely performing some investigatory function as a result of suspicious circumstances discovered following their encounter with the occupants of the vehicle. But we likewise recognize facts that distinguish the instant case from *U.S. v. Rowland, supra*. The basis of OPD's policy governing cataloging items is unclear after reviewing the testimony and does not present as clear a case of departure from operating procedure as did *Rowland*. Second, the officers in *Rowland* acknowledged an investigatory motive in conducting their search while no such acknowledgment was present here. Most notably, the case at bar differs significantly from *Rowland* in that prior to commencing a search of Briggs' vehicle, the OPD officers discussed their right, following impound of the vehicle, to now inventory the vehicle. This would clearly provide some support for the State's argument that OPD did not affix an "inventory search" label after the fact in order to retroactively cloak an otherwise improper investigatory search. The district court concluded that the officers sifted through the contents of Briggs' vehicle and opted not to catalog its items because of the lack of value rather than believing Briggs' argument that the testimony was a ruse for the officers' true investigatory motives. In connection with that testimony, the district court had the opportunity to view the witnesses in weighing their credibility. At a hearing to suppress evidence, the court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. *State v. Arizola*, 295 Neb. 477, 890 N.W.2d 770 (2017). In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court recognizes the trial court as the

""'"trier of fact"'"" and takes into consideration that the trial court has observed witnesses testifying regarding such motion to suppress. *Id.* at 486, 890 N.W.2d at 778.

Although we are certainly cognizant that a fact finder could find facts like these indicative that the officers' true motive was investigatory and that this was not an inventory, we cannot conclude that the district court's finding was clearly erroneous. Even though the record in this case presents a closer case than *State v. Nunez*, 299 Neb. 340, 907 N.W.2d 913 (2018), we likewise believe the totality of the facts here do not demonstrate that the district court clearly erred in finding that the officers' self-described inventory search was not a mere pretext for an improper evidentiary search. In so finding, we first note that the district court found, after reviewing the body camera footage and listening to the testimony presented at the suppression hearing, that after officers arrested Briggs for providing false information, driving on a suspended license, and the active warrant, "the officers decided to impound [Briggs'] vehicle as [Briggs] was under arrest and the vehicle was on private property. [One of the responding officers] called for a tow to have the vehicle towed to the police impound lot. An inventory search was then done." Although we understand Briggs' contention that the officers simply moved from his arrest to the search based upon their belief in their right to now search the vehicle without reference to impoundment or public safety, the district court found otherwise. The district court's finding that prior to conducting the inventory search, the officers made the decision to impound the vehicle represents a finding of fact which will not be disturbed by an appellate court unless clearly erroneous. See *State v. Nielsen*, 301 Neb. 88, 917 N.W.2d 159 (2018) (appellate court reviews trial court's findings regarding historical facts for clear error). Because there is support in the record at the suppression hearing for the court's finding, we do not believe this finding to be clearly erroneous. And as we have previously noted, that decision by the police to tow Briggs' vehicle for

safekeeping, on these facts, was within their discretion and was not unreasonable.

[18] As our case law makes clear, once the police rightfully made the decision to impound Briggs' vehicle, they were entitled to inventory its contents for their own protection. Unlike the facts in *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996), the State did not label the search as an inventory search after the fact having failed to conduct the search when it had the right to do so. Instead, contemporaneously with making the decision to arrest Briggs and impound his vehicle, the officers verbally discussed their right to conduct an inventory search of the vehicle following the decision to impound it. Like *Nunez*, this case does not present an issue of timing, such as in *Newman*, where a search was conducted utilizing the label of an "inventory search" once the police opted not to perform that search, even though it was originally within their right to do so, until they were presented with an ulterior motive to conduct the search. And we further note that "in the context of administrative and inventory searches, [the] ulterior motives of an officer do not invalidate police conduct that is objectively justifiable. *Whren v. U.S.*, [517] U.S. [806], 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996)." *State v. Flanagan*, 4 Neb. App. 853, 858, 553 N.W.2d 167, 172 (1996). Taken together, although the initial officer may have also had an investigatory motive in desiring to search Briggs' vehicle, having reasonably determined that the officers should impound Briggs' vehicle, the police likewise had a reasonable right to inventory the vehicle's contents and the officers' timely discussion about inventorying the vehicle underscores their acknowledgment of that principle.

Finally, although the police admittedly did not catalog all of the property in Briggs' vehicle, they did, in fact, inspect that property. Contrary to Briggs' assertion that the officers' search was limited to finding the contraband and associated evidence, the body camera video depicts that the officers did inspect the other contents of the vehicle and, ultimately, according to the

district court's factual finding, decided not to catalog its contents because of its limited value. Again, we do not find that factual finding to be clear error. See *State v. Nielsen, supra* (appellate court reviews trial court's findings regarding historical facts for clear error). Although we do not condone this practice and caution that failure to follow police policies could lead a future court to conclude that a search does not qualify as an inventory search, we do not make that conclusion here. Because the district court found that the officers decided to impound Briggs' vehicle before conducting its search, which finding was not clearly erroneous; because the officers' decision was discretionary and not unreasonable in accordance with OPD's stated policy; because the officers contemporaneously discussed performing an inventory before conducting their search as opposed to labeling it as an inventory search after the fact; because the officers appear to have inventoried the contents of the vehicle even though they failed to catalog all of its contents; and because of some support in the record for the officers' responsibility to catalog property of only high value, we hold that the district court did not clearly err in finding the police claim of an inventory search was pretextual and therefore conclude that this was a valid inventory search of Briggs' vehicle and not a pretext for a general rummaging in order to discover incriminating evidence. Briggs' assignment of error fails.

## CONCLUSION
For the reasons set forth above, we affirm.

AFFIRMED.