Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/08/2018 09:10 AM CDT

State of Nebraska, appellee, v.
Mark P. Nunez, appellant.
___ N.W.2d ___

Filed March 16, 2018.    No. S-17-398.

1. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.

2. **Search and Seizure: Police Officers and Sheriffs.** Inventory searches are considered reasonable because they serve at least three needs unrelated to criminal investigation: (1) to protect the owner's property while it remains in police custody, (2) to protect police against claims that they lost or stole the property, and (3) to protect police from potential danger.

3. **Search and Seizure.** The propriety of an inventory search is judged by a standard of reasonableness, and such a search must be conducted in accordance with standard operating procedures.

4. ____. An inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.

5. **Search and Seizure: Police Officers and Sheriffs: Evidence: Proof.** Under the inevitable discovery doctrine, challenged evidence is admissible if the State shows by a preponderance of the evidence that the police would have obtained the disputed evidence by proper police investigation entirely independent of the illegal investigative conduct.

6. **Constitutional Law: Search and Seizure.** A failure to strictly follow established policy does not render an inventory search unconstitutional per se.

7. \_\_\_\_: \_\_\_\_. Whether a search is permissible under the Fourth Amendment depends on whether it is reasonable, and the test of reasonableness cannot be fixed by per se rules; each case must be decided on its own facts.

Appeal from the District Court for Washington County: John E. Samson, Judge. Affirmed.

Sean M. Conway and Kate O. Rahel, of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Joe Meyer for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

Following a traffic stop leading to a driver's arrest, officers searched the vehicle before impounding it and discovered methamphetamine. Contrary to policy, a completed inventory sheet did not list the methamphetamine, and the officers apparently failed to separately list it. The driver unsuccessfully sought to suppress the evidence. Because we conclude that the search was reasonable and that the procedural defects did not raise an inference the search was conducted to discover evidence, we affirm the judgment below.

## II. BACKGROUND

### 1. Arrest and Overview of Search

In August 2016, Mark P. Nunez was stopped by Sgt. Jacob Hoffman of the Washington County sheriff's office for speeding. Nunez' 7-year-old son was the only passenger. After Hoffman approached Nunez' vehicle, Nunez informed Hoffman that he thought his driver's license had been suspended for failure to pay child support. Hoffman then returned to his patrol

car and confirmed with dispatch that Nunez' driver's license was indeed suspended and found that it was suspended in both Nebraska and Iowa. Hoffman also discovered that there was an active warrant for Nunez' arrest. Hoffman then returned to the vehicle to arrest Nunez. Hoffman handcuffed Nunez and placed him in the patrol car. The child was transported by another officer to one of Nunez' friends or family. The vehicle was impounded.

Before the vehicle was impounded, Hoffman and another officer searched the vehicle for the keys. While looking for the keys, Hoffman discovered a pipe. After the keys were located, the officers continued to search the vehicle and discovered a black container holding a substance that tested positive for methamphetamine. Nunez was charged with one count of possession of a controlled substance, along with one count of driving under a suspended license.

## 2. Motion to Suppress

Prior to the bench trial, Nunez moved to suppress all evidence obtained as a result of the search of his vehicle, alleging that the warrantless search violated his constitutional rights. The State took the position that the search fell within the inventory exception to the warrant requirement.

At a hearing on the motion to suppress, the State called Hoffman to testify and entered into evidence a document outlining the Washington County sheriff's office's policy and procedures for impounded vehicles ("written policy"), as well as a video from Hoffman's body camera.

### (a) Policy on Impounded Vehicles

The written policy states, in relevant part:

Any vehicle seized and impounded shall be inventoried. The sheriff's office impound/inventory report form shall be completed with all identified items listed on the impound/inventory sheet. All unlocked containers are to be searched and inventoried. If the vehicle has a trunk

release or if we are in custody of the keys, the trunk shall be inventoried, including any unlocked containers.

. . . .

. . . If any evidence or contraband is seized as the result of a vehicle impound[,] the item shall be listed on the impound/inventory report form with the word "evidence" listed next to the item. The property/evidence report form shall be completed on the item seized, tracking the item from the impound/inventory sheet to the property/ evidence sheet. The property/evidence tag number and where item was secured shall be listed on the property/ evidence report form.

Hoffman also testified about the Washington County sheriff's office's policy regarding impounded vehicles. He testified that according to the office's policy, officers are to "go through the vehicle and mark up anything that's of value and . . . check all unlocked containers in the vehicle, and if there's keys . . . check the trunk."

(b) Search for Keys

Footage from Hoffman's body camera depicted the stop, Nunez' arrest, and events thereafter. The video shows that after Nunez was arrested, Hoffman informed Nunez that his vehicle would be towed. Nunez then asked Hoffman if he had the keys or if the other officer had the keys. Hoffman responded that Nunez had the keys. Since Nunez was handcuffed, Hoffman told Nunez that he would get them for him. Hoffman then patted Nunez' pockets, apparently not locating the keys. He then instructed an officer standing nearby to check the vehicle, stating that he did not think Nunez had the keys. The video shows the other officer searching the back seat of the vehicle.

After Nunez was secured in the back of the patrol car, Hoffman went to help the other officer locate the keys. After they were unable to locate the keys in the passenger compartment of the vehicle, they questioned Nunez about

whether he had "chuck[ed] [th]em." Nunez denied getting rid of the keys, and Hoffman checked Nunez' pockets again. The officers then returned to the vehicle to search for the keys again. At that time, Hoffman located a pipe in the vehicle's center console underneath the steering column next to the gas pedal. A few minutes later, the other officer located Nunez' keys.

After finding the keys, the officers continued to search the vehicle. They then located the black container. Hoffman conducted a field test on the substance in the black container, and it tested positive for methamphetamine. The officers continued to search the passenger compartment and back of the vehicle.

Hoffman testified that when a person is placed under arrest and the arrestee's vehicle is being towed, he looks for the keys to the vehicle. When asked why he did so, he stated, "If the tow company has the keys they can put it in drive, which will allow the vehicle not to possibly have damage to it when they try to load it up or do whatever they need to do." He added, "[W]e try to keep at least the ignition key in there so it's more movable for the tow company." He testified that he looked for Nunez' keys for the same reason.

### (c) Inventory Sheet

On cross-examination, Hoffman admitted that the inventory sheet was not completed during the time that the officers were searching for the keys. He testified that an inventory sheet was completed by another officer in accordance with the written policy. According to Hoffman, the inventory sheet was completed sometime before the vehicle was towed, but he could not remember if it was done before he left to transport Nunez to jail.

The inventory sheet was not offered into evidence at the hearing on the motion to suppress, but was received into evidence for the bench trial. The pipe and black container were not listed on the inventory sheet.

### (d) Evidence Report

Although the written policy contemplates that a "property/ evidence report form shall be completed" on any evidence seized as the result of a vehicle impound, no such form was offered into evidence at the suppression hearing or the bench trial, and there was no evidence that one was ever completed.

### 3. CONVICTION AND APPEAL

After the hearing, Nunez' motion to suppress was overruled, and following a bench trial during which he preserved his objection to the evidence, Nunez was convicted of possession of a controlled substance. The district court acquitted Nunez of the charge of driving under a suspended license. Nunez was sentenced to a 2-year term of probation.

Nunez filed a timely appeal.

## III. ASSIGNMENT OF ERROR

Nunez assigns that the district court erred in overruling his motion to suppress.

## IV. STANDARD OF REVIEW

[1] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination.[1]

## V. ANALYSIS

The Fourth Amendment to the U.S. Constitution prohibits unreasonable searches and seizures.[2] It is well recognized that

---

[1] *State v. Hidalgo*, 296 Neb. 912, 896 N.W.2d 148 (2017).

[2] See *id.*

inventory searches conducted according to established policy are reasonable.[3]

[2] Inventory searches are considered reasonable because they serve at least three needs unrelated to criminal investigation: (1) to protect the owner's property while it remains in police custody, (2) to protect police against claims that they lost or stole the property, and (3) to protect police from potential danger.[4] These purposes impact our analysis of the procedures used in the case before us.

[3,4] The propriety of an inventory search is judged by a standard of reasonableness, and such a search must be conducted in accordance with standard operating procedures.[5] The reason for requiring standardized criteria or an established routine to regulate inventory searches is as follows:

"[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory. The individual police officer must not be allowed so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime . . . .'"[6]

Here, Nunez argues that the search in this case was not a reasonable inventory search because the search was not conducted in accordance with the policy of the Washington County sheriff's office. Nunez suggests that there are three ways in which the search did not comply with established policy:

---

[3] See, *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976).

[4] *Id.*

[5] *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996).

[6] *State v. Filkin*, 242 Neb. 276, 282, 494 N.W.2d 544, 549 (1993) (quoting *Florida v. Wells,* 495 U.S. 1, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990)).

(1) The officers were searching for keys, which Nunez claims is not a part of the established policy; (2) the officer who completed the inventory sheet did not list the pipe and the black container on it in accordance with established policy; and (3) the officers did not fill out an evidence report in accordance with established policy.

### 1. SEARCH FOR KEYS

First, Nunez argues that the written policy shows that searching for keys prior to impounding a vehicle is not an established part of the Washington County sheriff's office's policy. The State responds that searching for keys need not be part of the written policy in order to be established policy and that Hoffman's testimony established it as such. The State also argues that even if the officers had not searched for the keys, the pipe and black container would still be admitted as evidence because they would have been inevitably discovered pursuant to a valid inventory search. Assuming without deciding that we do not accept Hoffman's testimony as sufficient to supplement the written policy, we nonetheless agree with the State's alternative argument.

[5] Under the inevitable discovery doctrine, challenged evidence is admissible if the State shows by a preponderance of the evidence that the police would have obtained the disputed evidence by proper police investigation entirely independent of the illegal investigative conduct.[7] Here, even if the police had not searched for the keys, as pointed out by the State, they would have discovered the pipe and black container pursuant to the inventory search.

### 2. INVENTORY SHEET AND EVIDENCE REPORT

Nunez also argues that certain deficiencies with the inventory sheet and evidence report show that the established policy

---

[7] See *State v. Ball*, 271 Neb. 140, 710 N.W.2d 592 (2006).

was not followed, thereby rendering the inventory search unconstitutional. We disagree.

[6,7] A failure to strictly follow established policy does not render an inventory search unconstitutional per se.[8] "'Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's care-taking function.'"[9] Whether a search is permissible under the Fourth Amendment depends on whether it is reasonable, and "'"[t]he test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts."'"[10]

In support of his argument that the officers' failure to follow established policy invalidates the inventory search, Nunez cites *State v. Newman*.[11] In *Newman*, Lincoln police notified Nevada authorities that they were looking for a criminal suspect who was traveling by train to Nevada. The Nevada authorities arrested the defendant at a train station. At the time, he was carrying three suitcases. The authorities transported the defendant and his luggage to a detention center. They did not immediately search the suitcases, but inventoried them as bulk property.

It was not until after the Nevada authorities were told that certain items were needed as evidence that two police officers went to the detention center's property room and searched the suitcases, locating the needed evidence. Although it was the policy of the detention center to conduct an inventory search of the suitcases before placing them in the property room, we found that policy was not followed in *Newman*. Thus, we

---

[8] See *U.S. v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003) (stating "[e]ven when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of the evidence discovered as a result of the search").

[9] *Id*. (quoting *U.S. v. Mayfield,* 161 F.3d 1143 (8th Cir. 1998)).

[10] *South Dakota v. Opperman, supra* note 3, 428 U.S. at 373 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)).

[11] *State v. Newman, supra* note 5.

concluded that the search of the suitcases did not fall within the boundaries of the inventory exception.

Although the failure to follow established policy in *Newman* led to a suppression of evidence, *Newman* is clearly distinguishable from the case at hand. As noted above, the purpose of requiring searches to be conducted according to established policy is to ensure that inventory searches are "'not . . . a ruse for a general rummaging in order to discover incriminating evidence.'"[12] In *Newman*, the timing of the search and the facts surrounding it raised an inference that the search was not designed to produce inventory, but to discover incriminating evidence. Here, the alleged technical errors on the inventory sheet and the lack of an evidence report do not raise the same inference.

Certainly, the fact that the evidence seized was omitted from the inventory sheet does not suggest that the search was conducted solely to obtain evidence; if anything, it suggests the opposite.[13] And the fact that there was no evidence report is not suggestive, either.

After reviewing the facts and circumstances presented, we conclude that the failure to list the seized evidence on the inventory sheet and the failure to complete an evidence report for the seized evidence do not raise an inference that the search was conducted solely to discover evidence. Because the officers otherwise complied with the established policy, the inventory search was reasonable and Nunez' assignment of error is without merit.

## VI. CONCLUSION

For the reasons set forth above, we affirm Nunez' conviction.

AFFIRMED.

WRIGHT and KELCH, JJ., not participating.

---

[12] *State v. Filkin, supra* note 6, 242 Neb. at 282, 494 N.W.2d at 549.

[13] Compare *U.S. v. Rowland, supra* note 8 (suppressing evidence where officer listed only evidence seized and not other items in vehicle searched).