IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. LONCKE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

LAURIE A. LONCKE, APPELLANT.


Filed August 24, 2021.    No. A-21-076.


Appeal from the District Court for Sarpy County: GEORGE A. THOMPSON, Judge. Affirmed.

Thomas P. Stringenz, Sarpy County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.


PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

## INTRODUCTION

Laurie Loncke appeals from her convictions in the District Court for Sarpy County of driving under the influence of alcohol 15% or more, third offense; driving during revocation; possession of open alcohol container; and possession of drug paraphernalia. On appeal, Loncke asserts that the court erred in overruling her motion to suppress evidence. For the following reasons, we affirm the decision of the district court.

## STATEMENT OF FACTS

On November 27, 2019, Loncke was charged by information with the above offenses, all related to an incident occurring on October 20. Loncke filed a motion to suppress all statements given to members of the Sarpy County sheriff's office, as well as all evidence seized at the scene of the incident. The motion was heard on June 8, 2020.

- 1 -

Deputy Matt Strickler of the Sarpy County sheriff's office testified that on October 20, 2019, he was dispatched to a reckless vehicle broadcast in the area of a McDonald's parking lot after a caller reported that a red Chevrolet Cruze was driving erratically. The caller reported that he was driving behind the Chevrolet Cruze and that it had stopped in the middle of an intersection. When the traffic light turned green, the car did not proceed until another vehicle honked. The caller reported that he followed the Chevrolet Cruze and observed the driver make a left-hand turn into the McDonald's parking lot, cutting off several vehicles in the process. When asked to describe the driver, the caller stated that he observed a female with short brown hair wearing a red hoodie and tan pants exit the vehicle and enter the store. The caller also noted that while walking into the store, the driver dropped her keys on the ground, tried to retrieve them, and fell.

Upon arriving at the McDonald's, Strickler observed a red Chevrolet Cruze parked straddling two stalls and very close to two vehicles parked in front of it, with less than a foot of clearance between the bumpers. Specifically, Strickler noted that the vehicle was parked perpendicular to the angled parking stalls. Strickler observed heavy front-end damage on the vehicle, which was not fresh. While walking around the car, Strickler noticed an open can of beer in the center cup holder.

After Strickler returned to his cruiser, he observed a female matching the description given by the caller exit the store and walk toward the Chevrolet Cruze. The woman walked close to the Chevrolet Cruze. Strickler exited his vehicle and the woman, later identified as Loncke, began walking toward him. Loncke asked Strickler if everything was okay, to which he responded in the affirmative. Strickler asked Loncke if she was okay, due to the open beer can in the vehicle as well as the caller's statements. Loncke responded that she was okay and then engaged in a conversation with Strickler.

Loncke told Strickler that she works at the McDonald's and drove there to drop off a set of master keys to another manager. As a result of their conversation and his observations, Strickler was able to determine that Loncke was the driver of the Chevrolet Cruze. At this point, Loncke was not under arrest or in police custody. However, due to the open container of alcohol in the vehicle, Strickler decided to proceed with an investigation of driving under the influence (DUI). At this time, Loncke was detained and was unable to leave.

Strickler observed that Loncke had glassy eyes and slurred speech, which he noted were indicative of somebody who is under the influence of alcohol. Loncke admitted to Strickler that she was previously at a bar and consumed two shots of liquor and one beer. Loncke submitted to a preliminary breath test with a result of .222, at which point Loncke was placed under arrest. Strickler then conducted a records check which indicated that Loncke did not have a driver's license. Loncke was subsequently taken to the Sarpy County jail. Strickler indicated that he did not give Loncke *Miranda* warnings because he had no further questions after she was in custody.

At the conclusion of the hearing, Loncke's motion to suppress was taken under advisement. On August 3, 2020, the district court made oral findings and the motion to suppress was overruled. The court found that contact was permissible under the circumstances because there was probable cause that developed during the preliminary investigation. Loncke waived her right to a trial by jury and a bench trial was held on stipulated facts on October 14. The district court received as exhibits the transcript from the suppression hearing, the police report, and various other exhibits. Loncke renewed her objection to the receipt of evidence that she previously moved to suppress.

Loncke was found guilty of all counts. She was subsequently sentenced to 3 years' probation with terms including 60 days in jail, a $1000 fine, and a 5-year revocation of her driver's license for the aggravated DUI count, 20 days in jail with credit for 20 days served for the count of driving during revocation, and a $100 fine for each possession count. Loncke now appeals.

## ASSIGNMENTS OF ERROR

Loncke assigns that the district court erred in overruling her motion to suppress.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Briggs*, 308 Neb. 84, 953 N.W.2d 41 (2021). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Briggs, supra*.

## ANALYSIS

Loncke argues that the trial court erred in overruling her motion to suppress, asserting that her interaction with Strickler constituted a tier two seizure because it was more than noncoercive questioning. Under Nebraska law, police-citizen encounters are categorized into three tiers in the context of the Fourth Amendment. See *State v. Lowman*, 308 Neb. 482, 954 N.W.2d 905 (2021).

The first tier of police-citizen encounters involves no restraint of the liberty of the citizen involved, but, rather, the voluntary cooperation of the citizen is elicited through noncoercive questioning. This type of contact does not rise to the level of a seizure and therefore is outside the realm of Fourth Amendment protection.

The second tier, the investigatory stop, as defined by the U.S. Supreme Court in *Terry v. Ohio*, [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968),] is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning. This type of encounter is considered a seizure sufficient to invoke Fourth Amendment safeguards, but because of its less intrusive character requires only that the stopping officer have specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime.

The third type of police-citizen encounters, arrests, is characterized by highly intrusive or lengthy search or detention. The Fourth Amendment requires that an arrest be justified by probable cause to believe that a person has committed or is committing a crime.

Plainly, not every police-citizen encounter rises to the level of a seizure. A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. In addition to situations where an officer directly tells a suspect that he or she is not free to go, circumstances indicative of a seizure may include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen's person, or the use of language or tone of voice indicating the compliance with the officer's request might be compelled. A seizure does not occur simply because a law

enforcement officer approaches an individual and asks a few questions or requests permission to search an area, provided the officer does not indicate that compliance with his or her request is required.

*State v. Lowman*, 308 Neb. at 491-92, 954 N.W.2d at 916.

Here, the record clearly reflects that Loncke's interaction with Strickler began as a consensual interaction, as Loncke was the one who approached Strickler and began the conversation, which consisted of a generic exchange. As the interaction continued, however, the situation evolved into a tier two seizure. The question becomes whether Strickler developed reasonable suspicion to detain Loncke at this point. Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis. *State v. Lowman, supra*. In determining whether a police officer acted reasonably, it is not the officer's inchoate or unparticularized suspicion or hunch that will be given due weight, but the specific reasonable inferences which the officer is entitled to draw from the facts in light of the officer's experience. *Id*.

We conclude that Strickler had reasonable suspicion to believe that Loncke had committed a crime based on the totality of the circumstances. Before any interaction with Loncke, Strickler had received a citizen report about the Chevrolet Cruze driving erratically, hitting a curb, and the driver stumbling as she walked into the restaurant. Upon arriving at the restaurant, Strickler observed the Chevrolet Cruze parked overlapping two stalls in the parking lot. He observed an open can of beer in the front of the vehicle. According to the arrest report, after Loncke made contact with Strickler and prior to the start of the DUI investigation, Strickler notified Loncke that he had observed the empty can of beer in the vehicle, to which Loncke responded that she "already drank that one." All of this information prompted Strickler to detain Loncke and begin his DUI investigation. In our review, Strickler had sufficient articulable facts giving rise to reasonable suspicion that Loncke had or was committing a crime. We agree with the district court that there was no Fourth Amendment violation and we find no error in its denial of Loncke's motion to suppress her statements or any other evidence obtained during the investigation.

CONCLUSION

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED.