IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SUHR

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

BLAKE J. SUHR, APPELLANT.

Filed April 7, 2026.    No. A-25-343.

Appeal from the District Court for Buffalo County: ANDREW C. BUTLER, Judge. Affirmed.

Carson K. Messersmith, of Klein, Brewster, Brandt & Messersmith, for appellant.

Michael T. Hilgers, Attorney General, and Austin N. Relph for appellee.

MOORE, PIRTLE, and FREEMAN, Judges.

FREEMAN, Judge.

## I. INTRODUCTION

Blake J. Suhr appeals from his jury convictions in the Buffalo County District Court for three counts of possession of a controlled substance with intent to distribute, one count of prohibited acts, one count of driving while under the influence of alcohol, and three counts of driving while under the influence with a passenger under 16 years old. Suhr assigns error to the district court's denial of his motion to suppress, allowing the State to file a fourth amended information, and failing to arraign him thereon. He also argues that his trial counsel was ineffective. For the reasons stated herein, we affirm Suhr's convictions and sentence.

## II. BACKGROUND

On July 31, 2022, at approximately 8:58 p.m., Trooper Kyle Gaudreault of the Nebraska State Patrol observed Suhr's vehicle traveling with no illuminated headlights or taillights, despite sunset occurring at approximately 8:52 p.m. that evening. He initiated a traffic stop around 9 p.m.

- 1 -

It took Suhr approximately 57 seconds to stop the vehicle. Gaudreault observed that some of the vehicle's windows were rolled down and that the occupants of the vehicle were making furtive movements.

When Gaudreault approached the vehicle, he immediately detected a strong odor of alcohol coming from the vehicle. Suhr was the driver, accompanied by a front seat passenger, Vanessa Tapia, and three minor children in the backseat. Gaudreault observed open containers of alcohol on the passenger side floorboard, which Tapia attempted to conceal, as well as a clear container holding marijuana. Tapia admitted to the presence of alcohol containers in the vehicle but stated they were from an earlier recreational outing to a lake.

Gaudreault instructed all of the occupants to exit the vehicle and placed Suhr in his patrol car. Gaudreault then conducted a probable cause search of the vehicle and discovered 3.2 pounds of marijuana; marijuana paraphernalia; eight open containers of alcohol; $8,000 in cash; and controlled substances, including alprazolam, hydrocodone, and oxycodone. One bottle containing alprazolam belonged to a third party.

Upon returning to his patrol car, Gaudreault observed that Suhr had bloodshot, watery eyes, slurred speech, and a strong odor of alcohol. Suhr refused to answer questions about alcohol consumption and refused a field sobriety test. After a 15-minute observation period, Gaudreault administered a preliminary breath test, which registered a .122 breath alcohol content. Gaudreault arrested Suhr, and Suhr was subsequently transported to Buffalo County Jail, where a Datamaster breath test, administered at approximately 11:09 p.m., registered a .089 breath alcohol content.

In August 2022, the State charged Suhr with count 1, distribution of a controlled substance, clonazapam; count 2, distribution of a controlled substance, hydrocodone; count 3, possession of a controlled substance with the intent to distribute, marijuana; count 4, prohibited acts; count 5, driving while under the influence of alcohol; and counts 6, 7, and 8, driving while under the influence with a passenger under the age of 16. Suhr waived his right to a preliminary hearing and was bound over to the district court and charged via information.

The State subsequently filed a second and third information prior to trial. The second information amended counts 1 and 2 to reflect possession with the intent to distribute a controlled substance, updated the relevant charging statute for count 3, and amended count 5 to strike any allegation that Suhr's blood alcohol content was in excess of fifteen one-hundredths of one gram. The third information amended count 1 to reflect possession with the intent to distribute a controlled substance, alprazolam.

## 1. PROCEDURAL BACKGROUND

In November 2022, Suhr filed a plea in bar in the district court alleging that the "[c]ourt ha[d] received evidence and made a decision in [a] companion case," and further proceedings would result in a violation of the double jeopardy clause. The district court overruled the plea in bar, finding that Suhr failed to present evidence in support of his plea, and even if he did, Suhr's prior conviction involved different elements and was not the same offense under Nebraska law.

Suhr appealed the district court's denial of his plea in bar. On December 18, 2023, in case No. S-23-037, the Nebraska Supreme court summarily affirmed the district court's findings. On January 4, 2024, the district court scheduled arraignment.

### (a) Arraignment and Plea

In January 2024, Suhr filed a written plea of not guilty and waived arraignment. Suhr acknowledged that his lawyer advised him of his right to appear in person for arraignment.

### (b) Motion to Suppress

On August 19, 2024, Suhr filed a motion to suppress evidence derived from the July 31, 2022, traffic stop, arguing the stop lacked probable cause and the subsequent search was unlawful. The district court held an evidentiary hearing in September.

Gaudreault testified regarding the circumstances of the stop and the evidence recovered. He stated sunset occurred at 8:52 p.m. that day and testified he verified sunset times daily using the National Weather Service. Gaudreault testified that other vehicles traveling in the same direction had their headlights illuminated and that Suhr's vehicle lights remained off before Gaudreault activated his emergency lights. Gaudreault stated he could not recall whether Suhr's headlights were illuminated at the exact moment of the stop due to glare from his patrol lights.

The district court admitted exhibits 2 through 15, which included body camera footage of the stop and photographs of the evidence recovered from Suhr's vehicle. The footage shows that it was dusk, with diminishing daylight but enough ambient light to visibly capture the events as they occurred. Gaudreault testified that the video footage enhances the nature of daylight and often appears brighter on video than in the actual conditions.

The district court denied Suhr's motion to suppress. The district court determined that Gaudreault had probable cause to suspect that Suhr had committed a traffic violation by failing to activate his vehicle lights at sunset.

### (c) Pretrial Motion

On February 17, 2025, Suhr moved to allow a witness to appear for trial via videoconference (Zoom) because of the witness' present hospitalization and resulting inability to appear for trial in person. Suhr claimed that the witness was essential to the defense.

### 2. TRIAL

A jury trial was held over 3 days in February 2025. Suhr also renewed his objection to the July 2022 traffic stop and vehicle search, asserting the same grounds as in his motion to suppress. The district court denied the objection and granted Suhr a standing objection based on its prior ruling on the motion to suppress.

The State again called Gaudreault, whose testimony was consistent with his suppression hearing testimony. The State offered Gaudreault's body camera video footage of the July 31, 2022, encounter, and photographs of the evidence recovered from Suhr's vehicle. The State also called multiple witnesses to establish additional details of the seized money and the vehicle search, chain of custody for the evidence recovered, maintenance of the chemical breath test machine, and forensic evidence regarding the controlled substances. Suhr did not testify but called Tapia as a witness in his defense.

At the close of the State's case, the district court addressed Suhr's motion to allow testimony by Zoom. Suhr argued that the witness' testimony was relevant to explain the presence of prescription drugs bearing the witness' name found in Suhr's vehicle. The State objected,

asserting that no evidence had been presented showing that the witness was unable to testify in person. The court denied the motion, finding that the jury could reasonably conclude the prescription drugs belonged to the witness without his testimony.

During its closing argument, the State addressed the argument that Suhr lacked the intent to distribute controlled substances. The State claimed that the absence of distribution materials, including baggies or scales, did not negate intent and stated that "just because they weren't found doesn't mean they weren't there." Suhr did not object to the comment.

After closing arguments, the district court began instructing the jury. During instructions, the court discovered an error and excused the jury. The information incorrectly alleged impairment based on Suhr's blood alcohol concentration rather than breath alcohol concentration. Suhr did not initially object to the correction of the language. However, when the State moved to file a fourth amended information correcting the error, Suhr objected.

The district court overruled Suhr's objection and allowed the State to file the fourth amended information. Suhr waived service of the amended information. The district court declined to rearraign Suhr, stating the amendment did not change the charged offenses and simply conformed the information to the evidence. Suhr did not object to the district court's determination.

### 3. VERDICT AND SENTENCING

On February 20, 2025, the jury returned a guilty verdict on all counts of the fourth amended information. The district court accepted the jury's verdict and found Suhr guilty. The court ordered a presentence investigation report (PSR) and scheduled sentencing.

At the sentencing hearing, the district court imposed concurrent sentences totaling 6 to 16 years' imprisonment on all 8 counts and ordered the sentences to run consecutive to the term Suhr was currently serving in a separate case. The court granted Suhr 3 days' credit for time served in custody.

Suhr appeals.

### III. ASSIGNMENTS OF ERROR

Suhr assigns, consolidated and restated, that the district court erred in (1) denying his motion to suppress evidence derived from the traffic stop and (2) allowing the State to file a fourth amended information and failing to arraign him on it. Suhr also assigns that (3) his trial counsel was ineffective for (a) failing to have a witness testify who would have been beneficial to Suhr, (b) failing to object to the State's reference of information not in evidence during closing, and (c) failing to properly communicate with Suhr in preparation for trial.

### IV. STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. *State v. Perry*, 318 Neb. 613, 17 N.W.3d 504 (2025). Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id.*

- 4 -

A ruling on whether to allow a criminal information to be amended is made by the trial court in its discretion. *State v. Johnson*, 290 Neb. 369, 859 N.W.2d 877 (2015). A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. MOTION TO SUPPRESS

Suhr assigns error to the district court's finding that law enforcement had probable cause to stop his vehicle for a violation of Neb. Rev. Stat. § 60-6,219(1) (Cum. Supp. 2020). Suhr argues the statute requires headlights only after sunset and contends that, because it was still light at the time of the stop, no violation occurred. We find no merit to his argument.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ," as does article I, § 7, of the Nebraska Constitution. A traffic stop is a seizure for Fourth Amendment purposes, and therefore is accorded Fourth Amendment protections. *State v. Barbeau*, 301 Neb. 293, 917 N.W.2d 913 (2018).

A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Jasa*, 297 Neb. 822, 901 N.W.2d 315 (2017). In reviewing a challenge to the legality of an automobile stop, the question is not whether the officer issued a citation for a traffic violation or whether the State ultimately proved the violation; instead, a stop of a vehicle is objectively reasonable when the police officer has probable cause to believe that a traffic violation has occurred. *Id.*

Section 60-6,219(1) (Cum. Supp. 2025) provides, in pertinent part:

Every motor vehicle upon a highway within this state during the period from sunset to sunrise and at any other time when there is not sufficient light to render clearly discernible persons or vehicles upon the highway at a distance of five hundred feet ahead shall be equipped with lighted headlights and taillights as respectively required in this section for different classes of vehicles.

Here, Gaudreault testified that he observed Suhr driving without headlights or taillights at 8:57 p.m. Gaudreault further testified that sunset had occurred at 8:52 p.m., based on information he regularly obtained from the National Weather Service. He also observed that other vehicles traveling in the same direction as Suhr had their headlights and taillights illuminated. Based on this observation, Gaudreault initiated a traffic stop.

Although Suhr claims the sun had not yet set, the district court credited Gaudreault's testimony and found that sunset had occurred prior to the stop, and that Suhr was operating his

vehicles without lights at that time. In determining whether a trial court's findings of historical fact are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Briggs*, 308 Neb. 84, 953 N.W.2d 41 (2021).

The district court maintained that Suhr did not present evidence refuting Gaudreault's testimony regarding the time of sunset, and the dashcam footage further corroborated Gaudreault's observations concerning other drivers' headlights and taillights. Because the district court's factual findings are supported by competent evidence, they are not clearly erroneous. Accepting those findings, we conclude that the traffic stop was supported by probable cause. Suhr's assignment is without merit.

### 2. AMENDED INFORMATION

Suhr assigns error to the district court's allowing the State to file a fourth amended information, and the State's failure to arraign him on it. He argues the amendment changed the nature of the driving under the influence allegations from blood to breath testing and therefore prejudiced his ability to prepare a defense. He further argues that the court proceeded to trial without arraignment or waiver of the operative information, constituting reversible error. We disagree.

An information must inform the accused with reasonable certainty of the crime charged so that the accused may prepare a defense to the prosecution and, if convicted, be able to plead the judgment of conviction on such charge as a bar to a later prosecution for the same offense. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). A trial court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced. *State v. Banks*, 278 Neb. 342, 771 N.W.2d 75 (2009). A criminal information may be amended specifically to conform to the evidence adduced at trial. See *State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984).

Here, the third amended information alleged that Suhr submitted to a blood test during the traffic stop. At trial, the evidence established that Suhr submitted to a chemical breath test. The amendment to the information was made before the verdict and did not charge an additional or different offense. It merely corrected the charge to reflect that Suhr had taken a breath test rather than a blood test. Accordingly, the determinative question is whether Suhr's substantial rights were prejudiced.

A consideration in determining the propriety of the amendment and whether the defendant was prejudiced thereby is whether the amendment surprised the defense. *State v. Antillon*, 229 Neb. 348, 426 N.W.2d 533 (1988) (superseded by statute on other grounds as stated in *State v. Andersen*, 232 Neb. 187, 440 N.W.2d 203 (1989)). Suhr was not surprised by the amendment, as he had prior knowledge that he had taken a breath test rather than a blood test. Because the amendment simply corrected the testing method to conform with evidence Suhr was already aware of, Suhr was not prejudiced, and the district court did not abuse its discretion in allowing the amendment.

To the extent that Suhr argues that the district court erred by proceeding without arraignment on the fourth amended information, we disagree. Neb. Rev. Stat. § 29-1816(1)(b)

(Cum. Supp. 2022) provides, "If the accused appears in person and by counsel and goes to trial before a jury regularly impaneled and sworn, he or she shall be deemed to have waived arraignment and a plea of not guilty shall be deemed to have been made."

Prior to trial, Suhr filed a written waiver of arraignment and a plea of not guilty, which the district court accepted. During jury instructions, the court identified errors in the instructions and proposed an amendment to address the erroneous instructions. The State then moved to file a fourth amended information to address the jury instructions as well as the language pertaining to the manner of testing for the driving under the influence charge. Suhr initially objected to the State's motion: however, the court explained that the amendments reflected the evidence already presented and did not alter the penalties. Based upon that determination, the court stated it would not rearraign Suhr on those counts, and Suhr did not object to the court's failure to rearraign him. Consequently, the district court did not abuse its discretion in permitting the State to amend the information without again arraigning Suhr.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Suhr asserts that he was denied his right to effective counsel under the sixth amendment to the U.S. Constitution and article 1, § 11 of the Nebraska Constitution. Before addressing his specific claims, we begin with a review of the general principles governing ineffective assistance of counsel.

The Nebraska Supreme Court held in *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025), that assignments of error on direct appeal regarding ineffective assistance of trial counsel must "standing alone" specifically allege what conduct constituted deficient performance. An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *Id*.

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id*. The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id*.

While the assigned error must specifically state the conduct claimed as deficient performance, the argument section of appellant's brief should elaborate on that assignment by discussing legal authority and its application to the trial record. See *id*. An argument that does little more than restate an assignment of error does not support the assignment, and an appellate court will not address it. *State v. Kruger*, 320 Neb. 361, 27 N.W.3d 398 (2025). Likewise, where an appellant's brief contains conclusory assertions unsupported by a coherent analytical argument, the appellant has failed to include a specific argument sufficient to raise a claim. *Id*. With the foregoing in mind, we next consider each of Suhr's claims.

## (a) Failure to Call a Witness

Suhr assigns that his trial counsel was ineffective for failing to have a witness testify who would have been beneficial to Suhr. Suhr argues counsel knew that a pill bottle found in Suhr's possession belonged to another person but failed to obtain that witness' testimony after the district court denied remote appearance. Regardless of Suhr's argument, we decline to address this claim.

We find that Suhr's general assignment was not stated with the requisite level of specificity in his assigned error. Suhr's assigned error stops short of identifying the witness by name or description in the assignment. In *State v. Hagens*, 320 Neb. 65, 26 N.W.3d 174 (2025), the Supreme Court found that "witnesses" without any further description or detail in the assignment of error was not sufficiently stated for the purposes of an ineffective assistance of counsel claim. Accordingly, this claim is not preserved.

## (b) Failure to Object

Suhr assigns that his trial counsel was ineffective in failing to object to the State's reference of information not in evidence during closing. Suhr, in his argument, then points to the State's comment, "just because they weren't found doesn't mean they weren't there," in response to the defense's argument that no baggies or scales associated with the distribution of marijuana were found in the vehicle. Brief for appellant at 17. However, this error as assigned is insufficient, so we decline to review it.

Suhr neglects to identify in his assigned error the improper reference or what information was not in evidence. An assignment of error, standing alone, must specifically allege what conduct constituted deficient performance with enough specificity that a reviewing court could recognize the claimed deficiency. See *State v. Rupp*, 320 Neb. 502, 28 N.W.3d 74 (2025). Suhr fails to meet this threshold; therefore, we decline to reach his claim.

In Suhr's assignments of error, he also claims that the district court erred in allowing the State to reference information not in evidence. However, Suhr does not provide a separate argument supporting that assignment. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). We decline to address this claim further.

## (c) Failure to Communicate and Prepare for Trial

Suhr assigns that trial counsel was ineffective for failing to properly communicate with Suhr and prepare for trial. We decline to review this argument as it is insufficiently assigned and argued.

To raise an ineffective assistance of counsel claim on direct appeal, Suhr must make specific allegations of the conduct that he claims constitutes deficient performance. See *State v. Miranda*, 313 Neb. 358, 984 N.W.2d 261 (2023). Here, Suhr provides no detail regarding what his trial counsel failed to do in preparation specifically as it relates to counsel's subsequent performance during Suhr's trial. The allegation is merely a placeholder, and it is not preserved. This assignment of error fails.

## VI. CONCLUSION

The district court's denial of the motion to suppress was not clearly erroneous. The district court did not abuse its discretion in allowing the State to amend the information a fourth time or failing to arraign Suhr on it. Trial counsel was not ineffective. Accordingly, we affirm.

AFFIRMED.